In re 610 W. 142 OWNERS CORP., Debtor.

John PETERSON, et al., Plaintiffs,

v.

610 W. 142 OWNERS CORP., Irene Scharf Management Company, 610 West 142nd Street Associates, Leon Scharf, Morris Scharf, Irene Scharf, Manuel Scharf, Dvora Scharf, Rachel Beer, Albert Mack and Michael Notaro, Defendants.

Lester RIVERA, et al., Plaintiffs,

v.

610 W. 142 OWNERS CORP., 610 West 142nd Street Associates, Irene Scharf Management Company, Leon Scharf, Morris Scharf, Irene Scharf, Manuel Scharf, Dvora Scharf, Rachel Beer and Herzka Insurance Agency Inc., Defendants.

Bankruptcy No. 94–B–44488(JHG).

Adversary Nos. 95–9110A and 95–9116A.

United States Bankruptcy Court, S.D. New York.

March 30, 1998.

Robinson Brog Leinwand Greene Genovese & Gluck, P.C. by Michael S. Schreiber, New York City, Cantor, Epstein, Bailey & Degenshein, LLP by Edward G. Bailey, New York City, for the Scharfs.

Gainsburg & Hirsch by Hal M. Hirsch and Alan G. Kadish, New York City, for Hal M. Hirsch, Chapter 11 Trustee.

Robert Grimble, P.C. by Robert Grimble, New York City, for plaintiffs in the Rivera Proceeding, for the defendants Albert Mack and Michael Notaro in the Peterson Proceeding.

Kellner, Chehebar & Deveney by Douglas A. Kellner and Stephanie Goodman, New York City, for plaintiffs in the Peterson Proceeding.

Naimark and Associates, P.C. by Sol Naimark, New York City, for defendant Herzka Insurance Company.

*DECISION ON MOTION TO DETERMINE IF THIS PROCEEDING IS A CORE PROCEEDING PURSUANT TO 28 U.S.C. ¶ 157(b)(3)*

JEFFRY H. GALLET, Bankruptcy Judge.

Dvora Scharf, a Defendant in each of these adversary proceedings, moves, pursuant to 28 U.S.C. § 157(b)(3), for a determination that the proceedings, as they relate to her, are not "core" under title 11 and do not arise in a case under title 11 of the Bankruptcy Code ("the Code").

## Background

On June 10, 1997, District Judge John F. Keenan issued an Opinion and Order, *Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, 95 Civ. 9794, slip op. at 10, 1997 WL 317019 (S.D.N.Y. June 10, 1997), withdrawing the reference for the personal injury claims I severed from the *Peterson* proceeding,[1] and remanded the non-personal injury claims in both the *Peterson* and *Rivera* proceedings to me for a core/non-core determination. In accordance with Judge Keenan's Opinion, Dvora Scharf made this motion for a non-core determination.

## Jurisdiction

The United States Supreme Court's holding in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), clarified the bankruptcy court's jurisdiction. In response, Congress enacted 28 U.S.C. §§ 1334(b) and 157(a), which state that bankruptcy courts have jurisdiction over proceedings "arising under" title 11 of the United States Code or "arising in" or "related to" a case under title 11. *Celotex Corp. v. Edwards*, 514 U.S. 300, 305–07, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995); *In re Kelton Motors Inc. v. Dartmouth Banking Co.*, 121 B.R. 166, 178–79 & n. 12 (Bankr.D.Vt.1990). "Arising in" and "arising under" proceedings "encompass the matters that are at the core of the jurisdiction of the bankruptcy courts, and depend upon the application or construction of bankruptcy law as expressed in title 11." *In re Leco Enters., Inc.*, 144 B.R. 244, 248 (Bankr.S.D.N.Y.1992) (*quoting In re Consulting Actuarial Partners, Ltd. Partnership*, 72 B.R. 821, 828 (Bankr.S.D.N.Y. 1987).) Congress also defined the bankruptcy court's jurisdiction in 28 U.S.C. § 157(a). *See In re Texaco Inc.*, 85 B.R. 934, 937 (Bankr.S.D.N.Y.1988). Section 157(b)(1) of

---

1. Judge Keenan held that § 157(b)(5) of the Code requires him to withdraw the reference for the personal injury claims I severed from the Peterson Proceeding. *See* Opinion and Order p. 7.

the United States Code vests full judicial power in bankruptcy courts over core proceedings "arising under" title 11, or "arising in" a case under title 11.[2]

The Second Circuit has stated that " '[t]he relevant analysis [of "arising in" or "arising under" jurisdiction] is whether the nature of [the] adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy power.' " *In re CIS Corp.*, 172 B.R. 748, 756 (S.D.N.Y.1994) (*citing In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389 (2d Cir. 1990)). Other courts in this district have addressed the meaning of "arising in" and "arising under," holding that a proceeding is a "core proceeding," falling under the bankruptcy court's jurisdiction, "if it invokes a substantial right provided by title 11 or it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Leco Enters.*, 144 B.R. at 248–49 (*citing In re Wood*, 825 F.2d 90, 96–97 (5th Cir. 1987)). A core proceeding is "an action [that has] ... as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment." *Id.* at 249 (*citing Acolyte Electric Corp. v. City of New York*, 69 B.R. 155, 173 (Bankr.E.D.N.Y.1986), *aff'd*, 1987 WL 47763 (E.D.N.Y.1987)).

Besides core jurisdiction, bankruptcy courts have jurisdiction over matters "related to" the bankruptcy case. The Second Circuit employs a broad standard for "related to" jurisdiction. "The test for whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankruptcy estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.1992). If the answer is "yes," the litigation falls within the "related to" jurisdiction of the bankruptcy court. *See id.* The Third Circuit has held that "[a]n action is 'related to' bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the

bankrupt estate." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). The United States Supreme Court endorsed both tests and noted that "whichever test is used ... bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 1499 n. 6, 131 L.Ed.2d 403 (1995).

The relevance of the core/non-core distinction is the extent of the bankruptcy court's authority. *In re Seatrain Lines, Inc.,* 198 B.R. 45, 50 (S.D.N.Y.1996). The bankruptcy court may issue final orders and judgments in core proceedings. *See* 28 U.S.C. § 157(b)(1). In addition, the bankruptcy court may conduct jury trials in core matters, as long as all parties consent. *See Seatrain Lines,* 198 B.R. at 50 (*citing In re Ben Cooper, Inc.,* 896 F.2d 1394, 1402 (2d Cir.), *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated on remand,* 924 F.2d 36 (2d Cir.1991)). However, in non-core, "related to" matters, the bankruptcy court's power is more limited. *See Seatrain Lines,* 198 B.R. at 50. Absent the consent of all parties, the bankruptcy court may not issue final orders and judgments, but must submit proposed findings of fact and conclusions of law to the district court. *See* 28 U.S.C. § 157(c)(1); *see also Seatrain Lines,* 198 B.R. at 50. Finally, the bankruptcy court may not hold jury trials in non-core proceedings. *See Seatrain Lines,* 198 B.R. at 50. (*citing Orion Pictures Corp. v. Showtime Networks, Inc.,* 4 F.3d 1095, 1101 (2d Cir.1993), *cert. dismissed,* 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994)). Where the district court withdraws the reference to the bankruptcy court, this distinction disappears and the district court has full plenary jurisdiction over a "related to" proceeding.

**Discussion**

The narrow issue before me is whether the claims asserted against Dvora Scharf fall under the bankruptcy court's core jurisdiction. The other Scharf Defendants have conceded that this proceeding, as it relates to each of them, is core under 28 U.S.C. § 157(b)(2)(C) because they filed

---

**2.** Illustrations of core proceedings under § 157(b)(1) are found in 28 U.S.C. § 157(b)(2).

proofs of claims against the estate arising out of the same transaction that forms the basis of these adversary proceedings.[3]

In seeking a determination from me that the claims asserted in this adversary proceeding are non-core, Dvora Scharf argues that the claims asserted against her do not arise under title 11, do not arise in a case under title 11, and are wholly based on state law.[4] However, 28 U.S.C. § 157(3) states that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law issues." 28 U.S.C. § 157(3). The Second Circuit in *In re Ben Cooper, Inc.,* 896 F.2d 1394, 1399 (2d Cir.), *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated on remand,* 924 F.2d 36 (2d Cir.1991), stated that "bankruptcy courts are not precluded from adjudicating state law claims when such claims are at the heart of the administration of the estate." Because the core/non-core determination may vary from claim to claim, I will address the state law claims asserted against Dvora Scharf individually.

The *Rivera* Complaint alleges that Dvora Scharf became an officer of 610 W. 142 Owners Corp. ("142 Owners") in or about August of 1992 and has continued to date. Count I alleges that the Defendants, including Dvora Scharf, failed to obtain sufficient insurance for the premises known as 610 West 142nd Street, New York, New York ("the Premises"), constituting gross negligence and/or an intentional breach of Defendants' fiduciary duties. Count I further contends that the individual Defendants used their positions as majority shareholders and purported background as experts in the management of property to exclude non-defendant shareholders and directors from meaningful participation in managing 142 Owners, and instead ran it for their own benefit. Count I also alleges that the individual Defendants have failed to allow access to the books and records of 142 Owners and failed to recover damages from the individual Defendants.

Count II alleges that the Defendants failed to keep adequate records and segregate expenses attributable to apartments owned by the Defendants. Allegedly, funds and assets belonging to 142 Owners were converted to the use of other Defendants and not reimbursed. The *Rivera* Complaint contends that such actions are a breach of fiduciary duties by the individual Defendants to 142 Owners and to the Plaintiffs.

In Count III, Plaintiffs allege that the Defendants' refusal to allow them access to the books and records of 142 Owners is a violation of New York General Business Law § 349. They seek an injunction making the records available for inspection.

Count IV alleges that on September 13, 1994, at a meeting where only Dvora Scharf and Defendant Morris Scharf were present, a resolution to declare bankruptcy without notice to non-defendant shareholders was adopted. It also asserts that between $10,000 and $20,000 of a reserve fund earmarked for capital expenditures was misused for legal expenses and to protect the interests of the individual Defendants, without a shareholders' meeting or a meeting of the directors of 142 Owners.

Count V alleges that the February 7, 1994 fire ("the fire") was due to defective electrical wiring, which defect was due to the negligence of the individual Defendants and Irene Scharf Management Co.

Count VI is directed solely at Defendant Herzka Agency, Inc. ("Herzka"). It alleges that Herzka had a contractual and common law obligation of due care to notify purchasers of casualty insurance of insufficient coverage, and that Herzka failed to notify the Plaintiffs or 142 Owners of the lack of sufficient insurance or obtain a waiver or release from 142 Owners as to the deficient coverage.

---

3. "A debtor's adversary proceeding against a creditor is a core matter only when it arises out of the same transaction as the proof of claim— functioning, in essence, as a counterclaim to it." *Seatrain Lines,* 198 B.R. at 50 n. 7 (S.D.N.Y. 1996) (citing *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)).

4. Defendant Herzka Insurance Agency, Inc. also argues that this proceeding is not core as the causes of action arise under the laws of the State of New York.

Finally, Count VII alleges that the Defendants were given notice in July of 1989 that they underinsured the Premises, which they never revealed to the Plaintiffs. The Plaintiffs allege that they purchased their apartments based in part on the representation that Defendants adequately insured the Premises. Plaintiffs allege that the non-disclosure constitutes a material fraud in the offering of securities under New York State General Business Law.

The *Peterson* Plaintiffs have also filed a Complaint against the Defendants,[5] including Dvora Scharf. The first cause of action alleges that the fire was caused solely because of the carelessness and negligence of the Defendants in failing to repair and maintain the electrical systems, permitting the electrical systems to be unsafe and hazardous, failing to have adequate fire stopping between apartments, failing to have proper fire walls and a combustible subdivision in the cockloft as required by New York City and State laws, failing to repair water leaks, failing to equip the building with adequate smoke detectors, and failing to comply with all of the fire safety protection measures appropriate for a multiple dwelling. This cause of action also alleges that the Defendants had actual and constructive notice of the dangerous conditions and that the Defendants' negligence caused the Plaintiffs' injury. Count I also states that the Defendants' failure to meet their legal responsibilities was in gross, willful and wanton disregard of their responsibilities as owners of a multiple dwelling.

Count II alleges that the Defendants' negligence caused the fire which, in turn, caused the Plaintiffs to suffer serious damage, loss, and irreparable harm to their property and personal possessions. Plaintiffs allege that the Defendants' negligence caused mental anguish and trauma. Count II also asserts negligence by the Defendants for failing to secure the Premises after the fire.

Count III alleges, under New York State Multiple Dwelling Law, the New York City Housing Maintenance Code and other laws regulating housing for New York City and State, the Defendants willfully, wantonly, or with gross negligence breached their leases with the Plaintiffs by failing to provide a safe and habitable premises and by failing to provide an adequate fire prevention system. It alleges that before the fire, the conditions at the Premises were dangerous and in violation of law and that the Defendants failed to correct these conditions, resulting in the Plaintiffs being unable to use the Premises in a manner reasonably intended by the Plaintiffs. Count III also alleges that the fire was a foreseeable consequence of the Defendants' negligent behavior. Finally, the Plaintiffs allege that the Defendants acted with depraved indifference to the Plaintiffs' lives, safety, and health in utter and callous disregard of their obligations and responsibilities as owners of the Premises.

Count IV states that the Defendants intentionally and recklessly failed and refused to restore the Plaintiffs to their homes in an effort to intimidate, harass and cause mental distress and anguish so that the Plaintiffs would abandon their apartments under the New York City Rent Stabilization Law and New York City Emergency Rent Control Law. In the alternative, the Plaintiffs allege that the Defendants negligently failed to take reasonable steps to restore the Plaintiffs to their homes, causing mental distress and anguish and interference with their lifestyles. Alternatively, Plaintiffs allege that the Defendants breached the lease by failing to restore the Plaintiffs to possession of their apartments which caused distress, anguish and interference with their lifestyles.

Count V is for attorney's fees.

Hal Hirsch, the Chapter 11 Trustee ("the Trustee") has also filed a Complaint and Cross–Complaint. Counts I, II, IV, VII, X and XI all allege that the Defendants either negligently or intentionally violated their fiduciary duties by failing to obtain appropriate insurance for the Premises. Counts V and VI allege that the Defendants negligently or intentionally breached their fiduciary duties by failing to maintain adequate wiring, fire walls and floors, subdivisions in the cock-

---

**5.** The *Peterson* Complaint excludes Defendants Michael Notaro and Albert Mack from its allega-
tions.

loft, and adequate smoke detectors and other fire safety measures. Count VIII alleges that the individual Defendants, acting through Scharf Management Co., used funds belonging to the Debtor to repair apartments owned by the individual Defendants. Furthermore, this Count alleges that the individual Defendants breached their fiduciary duties by failing to keep accurate books and records and segregate expenses attributable to apartments owned by the individual Defendants. Count IX alleges·that the Defendants invaded a reserve fund that was to be used only for capital expenditures. Furthermore, on September 13, Dvora Scharf and Defendant Morris Scharf were present at a meeting and passed a resolution to declare bankruptcy, without notice given to non-defendant shareholders. This Count alleges that the Defendants willfully and intentionally breached their fiduciary duties by not notifying the Plaintiffs of their intent to invade the capital reserve for legal expenses.

## Decision

I find that Counts I and V of the *Rivera* Complaint, Counts I, II, III and IV of the *Peterson* Complaint, and Counts I, II, III, IV, V, VI, VII, X and XI of the Trustee's Complaint are all *Marathon*-type claims and, therefore, non-core. I am mindful that under New York law, a bankruptcy trustee, suing on behalf of the debtor, may pursue an action for breach of fiduciary duty against the debtor's fiduciaries. *In re The Mediators, Inc.,* 105 F.3d 822, 827 (2d Cir.1997) (*citing In re Keene Corp.,* 164 B.R. 844, 853 (Bankr.S.D.N.Y.1994)). Breach of fiduciary duty claims against an officer or director of a debtor-in-possession are core matters under § 28 U.S.C. 157(b)(2)(A). *Glinka v. Abraham and Rose Co. Ltd.,* No. 2:93–CV–291, 1994 WL 905714 *8 (D.Vt. June 6, 1994). Moreover, when a trustee enforces a cause of action that belongs to the estate, the trustee is liquidating an asset. *In re Michigan Real Estate Ins. Trust,* 87 B.R. 447, 453 (E.D.Mich.1988). "However, when the cause of action is itself a creature of state law, as the claims sounding in negligence and breach of fiduciary duty clearly are, the bankruptcy court may not constitutionally enter a judgment over the objection of the non-debtor defendant." *Id.* (*citing Northern Pipeline*

*Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)). Here, these state law·causes of action for breach of fiduciary duty and negligence arose prepetition. They do not involve the application of bankruptcy law and are therefore non-core. *See Matter of Delaware & Hudson Ry. Co.,* 122 B.R. 887, 894 (D.Del. 1991) (district court found that the state law claims at issue in a directors & officers lawsuit were non-core where the claims existed before, and independent of, the bankruptcy filing); In the *Matter of TVR of America, Inc.,* 123 B.R. 159, 162 (Bankr.D.Conn.1991) ("causes of action that existed prior to the ·filing of the bankruptcy case and that would continue independently of the provisions of title 11, that are not specifically treated as core proceedings under 28 U.S.C. § 157(b)(2)(B) and where the parties' rights and obligations are not meaningfully affected as a result of the bankruptcy filing,.are generally treated as non-core proceedings.") (citations omitted).

The prepetition timing of these claims is crucial to my finding that these causes of action are non-core. "[T]he time the cause of action arose … is directly relevant" to a core/non-core analysis. ( *In re Century·Brass Prods., Inc.,* 1992 WL 22191 at *2–3) (D.Conn.1992). *See Seatrain Lines,* 198 B.R. at 51 (stating that "[c]ourts in this circuit have held that postpetition causes of action give rise to core proceedings"); *In re County Schools, Inc.,* 163 B.R. 424, 428 (Bankr.D.Conn.1994) (*citing Germain v. Connecticut Nat'l Bank,* 88 B.R. 17, 20–21 (D.Conn.1988) ("[A] proceeding by the debtor against a creditor based on various state law claims may be a core matter, if most. of the allegedly improper acts ·by the creditor occurred postpetition and impacted directly on the administration of the estate.")).

Although the claims for breach of fiduciary duty and negligence are not core, they are "otherwise related to a case under title 11." *In re Michigan Real Estate,* 87 B.R. at 453 (citations omitted). *See In re Roddam,* 193 B.R. 971, 977 n. 7 (Bankr.N.D.Ala.1996) (finding a state law cause of action based on prepetition events property of the estate and

a "related to" proceeding) (citations omitted). If the Plaintiffs are successful in their actions against the Defendants, including Dvora Scharf, the outcome will affect property available for distribution to creditors of the bankruptcy estate through the proceeds of either the Directors and Officers' liability insurance coverage or if the Defendants are personally liable.

▆▆▆▆ Likewise, I find that Counts II and IV of the *Rivera* Complaint and Counts VIII and IX of the Trustee's Complaint are causes of action for conversion and breach of fiduciary duty or both. Applying the analysis above, these are prepetition torts governed by state law and therefore, they are non-core, "related to" causes of action. Finally, Count VII of the *Rivera* Complaint alleges fraud in the offering of securities and is governed by New York State General Business Law. Again, this prepetition act is a non-core, "related to" cause of action.

▆▆▆▆ I find that Count III of the *Rivera* Complaint is core because it alleges that the Defendants, including Dvora Scharf, refused to allow the Plaintiffs access to the books and records and the refusal has continued postpetition. "[A]cts by the officers of a debtor-in-possession would seem to clearly be 'matters concerning the administration of the estate' under" 28 U.S.C. § 157(b)(2)(A). *Glinka v. Abraham and Rose Co. Ltd.*, No. 2:93–CV–291, 1994 WL 905714 *8 (D.Vt.1994).

Count VI of the *Rivera* Complaint is directed at Herzka and is not a factor in my determination of whether the claims against Dvora Scharf are core or non-core. Likewise, Count V of the *Peterson* Complaint is for attorneys' fees and does not weigh on the issues before me.

Although the parties did not address the issue, I must address the question of whether I should consider the adversary proceeding as a whole when making a core/non-core determination or if I should evaluate each cause of action separately. There is case law favoring a "predominately core" test, suggesting that a court should determine that an entire proceeding is core, if the core aspects

predominate and the non-core aspect is insignificant. *Id.* at *10 (*citing In re Sibarium*, 107 B.R. 108, 115 (N.D.Tex.1989);) *In re Blackman*, 55 B.R. 437, 443 (Bankr.D.C. 1985). While I am not prepared to adopt that test here, I find that the non-core claims against Dvora Scharf are significant. She may very well be entitled to a jury trial on these claims.

The *Rivera* Plaintiffs, the *Peterson* Plaintiffs, and the Trustee ("the Opponents")[6] argue that this is a core proceeding under the catchall provisions of 28 U.S.C. §§ 157(b)(2)(A), (C) and (O). Specifically, the Opponents argue that this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) because the ultimate goal of this adversary proceeding is the recovery of the estate's only remaining assets, namely insurance proceeds. The Opponents assert that because the administration of the insurance assets and the adjustment of claims among the claimants is inherent to the administration of the estate, this proceeding falls under 28 U.S.C. § 157(b)(2)(A) as a core proceeding.

▆▆▆▆ A chapter 11 debtor's rights under its insurance policies are property of the estate under § 541(a) of the Code. *In re Spectrum Info. Techn., Inc.*, 183 B.R. 360, 364 (Bankr.E.D.N.Y.1995) (*citing In re St. Clare's Hosp. and Health Center*, 934 F.2d 15, 18–19 (2d Cir.1991) (citations omitted)); *In re Johns–Manville Corp.*, 837 F.2d 89, 91–94 (2d Cir.1988), (*cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988)). Therefore, disputes involving a declaration of a debtor's rights with respect to property of the estate are core proceedings. *See* 28 U.S.C. § 157(b)(2)(O); *Spectrum*, 183 B.R. at 364. Here, the Plaintiffs sue for negligence and breach of fiduciary duty. There are no issues about the insurance policies or the scope of the insurance coverage. *See Plaza at Latham Assocs. v. Citicorp North America Inc.*, 150 B.R. 507, 513 (N.D.N.Y.1993) (Distribution of insurance proceeds pursuant to an insurance policy is material to the liquidation of the debtor's estate, and the merits of a proceeding to determine such

---

**6.** I will address the arguments of the Opponents together since their arguments are virtually the

same and to proceed otherwise would be redundant.

distribution is a core proceeding.). That the Plaintiffs may recover a portion or all of any judgment against Dvora Scharf from insurance proceeds does not transform this otherwise non-core, related to adversary proceeding into a core matter. *See Weiner's, Inc. v. T.G. & Y. Stores Co.,* 191 B.R. 30, 32 (S.D.N.Y.1996) ("[T]ort litigation is not transformed into an estate administration matter simply because it may ultimately bring funds into the estate, and thereby allow the renovation of damaged property.") (citations omitted).

The Opponents' also argue that this is a core proceeding under 28 U.S.C. § 157(b)(2)(*O*) because it affects the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship. The Opponents claim that this proceeding is at the heart of the tension between the estate and its creditors in this chapter 11 case now that the Plan of Reorganization ("the Plan") has been confirmed and the Trustee has sold the Premises. The Opponents assert that there will be no distribution to unsecured creditors except through a recovery in this proceeding. Given that the claims of all the creditors, including the Scharfs' claims, are wholly dependent upon recovery here, the Opponents argue that this action is equivalent to liquidating the estate or adjusting debtor-creditor relationships and, therefore, is core.

■ This argument is unpersuasive. The Opponents cannot bootstrap prepetition causes of action, premised on state law, into the catchall provisions of 28 U.S.C. § 157(b)(2). *In re CIS Corp.,* 172 B.R. 748, 757 (S.D.N.Y.1994) ("A debtor cannot reclassify ... a non-core state law cause of action by declaring that it affects either 'the liquidation of assets of the estate' or 'the administration of the estate.' "). To do so would allow the "amorphous" catch-all provisions to "emasculate" the Supreme Court's decision in *Marathon. Id.* Every proceeding can be characterized as a core proceeding, because every recovery can change the size of the bankruptcy estate. *In the Matter of Delaware & Hudson Ry. Co.,* 122 B.R. 887, 894 (D.Del.1991). "This is obviously contrary to what Congress intended when it statutorily

distinguished between core and non-core proceedings." *Id.*

My finding does not ignore the fact that the Second Circuit has significantly narrowed the reach of *Marathon* by stating that bankruptcy jurisdiction must be construed as broadly as possible within constitutional limits. *Seatrain Lines, Inc.,* 198 B.R. 45, 51 (S.D.N.Y.1996) (*citing In re Best Prods. Co.,* 68 F.3d 26, 31 (2d Cir.1995) (*Marathon* )holding is a "narrow one"); *In re Ben Cooper, Inc.,* 896 F.2d 1394, 1399 (2d Cir.), *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated on remand,* 924 F.2d 36 (2d Cir.1991) (bankruptcy jurisdiction must be "construed as broadly as possible within the constitutional constraints of Marathon"). However, although Congress intended the catch-all provisions to encompass a wide range of matters, "there is no evidence of any Congressional intent to contravene the Supreme Court's holding in Marathon." *In re Gaston & Snow,* 173 B.R. 302, 305 (S.D.N.Y.1994) (*citing In re Orion Pictures Corp.,* 4 F.3d 1095, 1102 (2d Cir.1993), *cert. dismissed,* 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994).)

Accordingly, I find that the prepetition causes of action against Dvora Scharf arise solely under state law and are not core claims under 28 U.S.C. § 157(b)(2)(*O*) merely because the estate will receive funds that in turn will affect creditors' recoveries, if liability is found. The effect on the estate of any possible recovery from the Defendants puts these state law claims under my "related to" jurisdiction.

■ I also find that the Opponents' argument that this proceeding against Dvora Scharf is core under 28 U.S.C. § 157(b)(2)(*O*) because the proceeding adjusts the debtor-creditor relationship is unpersuasive. They assert that the consolidated adversary proceeding will result in a determination of whether or not, and to whom, the insurance proceeds should be paid, including payment to the bankruptcy estate itself. This argument fails to consider the very narrow scope of this decision. The motion before me is to determine whether the claims asserted against Dvora Scharf are core or non-core. Viewed from this perspective, Dvora Scharf

is not a creditor of the estate and, therefore, the Opponents cannot successfully use the catch-all provision of 28 U.S.C. § 157(b)(2)(*O*) to argue that the claims against her are core.

The same reasoning applies to the Opponents' argument that this adversary proceeding is core under § 157(b)(2)(C) because the other Defendants have filed proofs of claim in the bankruptcy case. As already stated, the other Defendants concede that the adversary proceeding is core against them because they have filed proofs of claim and, therefore, have submitted themselves to my jurisdiction. However, Dvora Scharf did not file a proof of claim in the bankruptcy case. Therefore, the state law claims asserted against her are not core under § 157(b)(2)(C).

The Opponents argue that the adversary proceeding is core concerning the claims against Dvora Scharf because the Plan provides for retention of jurisdiction over this adversary proceeding and provides for any recovery to be channeled to creditors through the estate. The Opponents argue that the claimants have joined in one bankruptcy court litigation to recover in one action, the proceeds of which will be distributed through the estate by the mechanism of the Plan. A provision of the Plan by itself cannot confer core jurisdiction over Dvora Scharf.

Finally, the Opponents argue that if it were not for the bankruptcy court, the Plaintiffs would have no other forum in which to pursue their claims. This is not true. I found these state law causes of action to be within my "related to" jurisdiction. Therefore, although I am limited to submitting proposed findings of fact and conclusions of law to the district court, the district court has full jurisdiction over these claims. The district court may be a more suitable arena for the resolution of this adversary proceeding because Dvora Scharf may be entitled to a jury trial. Judge Keenan specifically left this possibility open in his Opinion and Order.

### Conclusion

I find that Counts I, II, IV, V and VII of the *Rivera* Complaint, Counts I, II, III and IV of the *Peterson* Complaint, and Counts I, II, III, IV, V, VI, VII, VIII, IX, X and XI of the Trustee's Complaint are non-core, "related to" claims. I find that Count III of the *Rivera* Complaint is a core claim. I find that Count VI of the *Rivera* Complaint, which is directed at Herzka, is not related to my determination of whether the claims against Dvora Scharf or core or non-core. Likewise, I find that Count V of the *Peterson* Complaint is for attorneys' fees and therefore, irrelevant to this decision.

Settle Order.